UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV249

| | |
|---|---|
| BERNARD SCABOROUGH, ) | |
| ) | |
| Plaintiff, ) | MEMORANDUM AND ORDER |
| v. ) | |
| ) | |
| WACHOVIA BANK CORPORATION, ) | |
| ) | |
| Defendant. ) | |

In this civil action for monetary and punitive relief, pro se Plaintiff Bernard Scarborough alleges that Defendant Wachovia Bank, his former employer, terminated his employment because of his race and in retaliation for filing EEOC complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) and 3(a). He also asserts claims under North Carolina law for negligent supervision and intentional infliction of emotion distress. Jurisdiction is present. 28 U.S.C. §§ 1331, 1367.

Presently before the Court is the defendant's motion for summary judgment, which the Court grants in its entirety. The plaintiff's claim for racially discriminatory discharge fails because it does not fall within the scope of either EEOC charge, which covered only retaliation. And his claim of retaliation fails because he cannot show that his termination and his filing EEOC charges were causally connected, or that his employer's proffered non-discriminatory reasons are a cover-up for retaliation. The reasons for the Court's decision follows, beginning with the following facts it finds to be material and undisputed.

1

FACTS

The relevant facts of this case are straightforward and not in dispute. Bernard Scarborough, an African-American male, worked at Wachovia for ten years, most recently as a Foreign Exchange Analyst assigned to the "funds in" desk.

Beginning in 2002, Scarborough was informally counseled and formally reprimanded by his supervisors on numerous occasions for issues relating to his poor attitude and behavior towards management, the need to properly notify his managers when scheduling time off or when he would be away from his desk, his failure to train on Microsoft Excel, and other performance deficiencies.[1] Scarborough was placed on probation in November, and ultimately received an overall rating of "2" (on a scale of 1-to-5) for his 2002 performance review, making him ineligible for a raise or bonus. Displeased, Scarborough filed his first charge of discrimination with the EEOC on March 26, 2003, alleging that he was unfairly denied a bonus and salary increase because of his race and sex. The EEOC dismissed the charge and issued a right-to-sue letter on August 6, 2003.

Several uneventful months passed for Scarborough. In mid-July, however, he made a number of mistakes that led to his discharge. On July 16, Scarborough, in direct violation of Wachovia's policy, gave immediate credit for two checks (totaling over $650,000) to a foreign client not on the list of approved credit risks. The following day, he failed to identify the Nostro Bank on an incoming fund trade, ultimately costing Wachovia $1,828.71. He also failed to send his end-of-the-day Excel spreadsheet to the NYC office – one of his basic job duties – delaying the start time for

---

[1]Among the supervisors and other personnel involved in these and other decisions concerning Scarborough were Sharon Stewart, Scarborough's team supervisor; Joe Palarnara, the Foreign Exchange Operations manger; Richard Stanula, the department's HR Business Partner; Senior HR Business Partner Alan Flynn; George Simonetti, the Senior Manager for Institutional Trading Operations; and Bob Sontag, Wachovia's Head of Wholesale Operations.

2

processing drafts in the NYC office. Finally, on July 18, Scarborough transposed a conversion rate of 1.116 into a rate of 1.166, exposing Wachovia to the risk of losing nearly $9,5000 that was incorrectly paid to (but subsequently returned by) the customer. Scarborough was suspended with pay, pending a complete assessment of his performance.

Unfortunately for Scarborough, the investigation uncovered other errors. First, during the prior months, Scarborough had authorized immediate credit of forty-five checks of customers who were not on the short list for immediate processing. Second, thirty-three credit advice documents, dating as far back as five-months, were found on Scarborough's desk instead having been forwarded to FX investigations. Finally, Scarborough failed to identify the Nostro Bank on two other occasions, May 19, 2003, and June 3, 2002.

On August 4, 2003, Sontag, Simonetti, Palamara, Stanula and Flynn met to decide the appropriate course of action to take based upon these findings. Each agreed that Scaborough's performance deficiencies rose to the level of termination, but agreed that he should be permitted to address the evidence against him. Two days later, Palamara, Stanula and Flynn met with Scarborough and explained the seriousness of his mistakes. Scarborough conceded that he had made some mistakes, but claimed that he was unaware of the proper process for immediate credit on foreign drafts and for credit advice documents going to the Investigation group. (His employers found this dubious because Scarborough had followed these procedures in the past, and had the list of approved credit-risks taped to his cubicle). After the meeting, Sontag, Simonetti, Palamara, Stanula and Flynn each agreed that the seriousness of the mistakes, coupled with Scarborough's performance history and behavioral issues required his termination. The next day, August 7, Scarborough filed his second charge with the EEOC alleging that his suspension was the result of

retaliation for his filing of his first EEOC charge.

On August 14, 2003, Flynn, Stanula and Simonetti informed Scarborough of their decision. Flynn then informed Scarborough of Wachovia's Termination Appeal process. Scarborough did not avail himself of this option. He instead promptly filed his third EEOC charge, alleging retaliatory discharge for having filed two previous charges of discrimination "complain[ing] of unlawful employment practices." The EEOC subsequently dismissed both his second and third charges, and issued a right-to-sue letters on January 15, 2004. Scarborough subsequently filed a complaint in state court on April 15, 2004, which the defendant removed to this Court on May 23, 2004.

## COMPLAINT AND PROCEDURAL HISTORY

Because the plaintiff is proceeding pro se, the Court will construe his pleadings liberally and address any questions squarely presented. Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990). Scarboroughs's First Cause of Action alleges discriminatory discharge on the basis of race. His Second Cause of Action alleges that he was terminated in retaliation for filing a EEOC charge of discrimination on March 26, 2003. His Third and Fourth Causes of Action can be read to allege negligent supervision and intentional infliction of emotional distress under North Carolina law.[2] The defendant now moves for summary judgment on all claims.

## SUMMARY JUDGMENT

Summary judgment is appropriate where the Court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R.

---

[2]The plaintiff's complaint also mentions a "hostile work environment," although it is not a named cause of action. If the plaintiff were attempting to argue hostile work environment, such a claim would fail for failure to exhaust administrative remedies. See Chacko v. Patuxent Inst., 429 F.3d 505, 508-10 (4th Cir. 2005).

Civ. P. 56(c). In making that determination, the Court must be certain the record does not reveal any genuine material factual dispute, resolving all ambiguities and drawing all legitimate factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is especially true in employment discrimination cases where determinations of motive and causation are critical. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996). The lenity afforded pro se pleadings notwithstanding, it is not the Court's job to formulate arguments or to hunt down the pertinent materials: It is the plaintiff's responsibility to provide a record. Measured by these standards, the defendant is entitled to summary judgment as to each of the plaintiff's claims.

1. <u>First Cause of Action: Discriminatory Discharge on the Basis of Race</u>

The defendant contends that Scarborough's failure to check the boxes for "race," "color," or "national origin," precludes his racial discrimination claim. Generally, a plaintiff may not pursue a claim under Title VII that he failed to include in his underlying EEOC charge. Chacko v. Patuxent Inst., 429 F.3d 505, 508-10 (4th Cir. 2005). This rule does not require "procedural exactness," Alvarado v. Bd. Trs. Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988), and a plaintiff may proceed on his Title VII claim so long as the complaint is "reasonably related to the [EEOC] charge and can be expected to follow from reasonable administrative investigation," Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). Thus, the plaintiff's failure to check the boxes for "race," "color," or "national origin," does not, by itself, preclude his claims for discriminatory discharge, so long as the narrative of the charge alleges that form of discrimination in the complaint. See Chacko, 429 F.3d at 509. The narrative in the body of plaintiff's EEOC charge, however, fails to mention racial discrimination, even obliquely. Nor would a reasonable investigation of the

retaliation charge be expected to prompt an investigation of racial discrimination, even considering plaintiff's first charge of discrimination.[3] Therefore, summary judgment is appropriate as to the plaintiff's First Cause of Action.

2.  Retaliation.

The plaintiff lacks any evidence that the defendant acknowledged having retaliated against him for filing the EEOC charge, or other legally sufficient direct or circumstantial evidence that retaliation motivated his employer's adverse employment decision. Therefore, he must proceed under the familiar McDonnell Douglas burden-shifting framework, under which the plaintiff, after raising an inference of discrimination through his prima facie case, must demonstrate that his employer's cited permissible reasons for taking an adverse employment action are actually a pretext and that "unlawful retaliation was the determinative factor in the challenged decisions." Ross v. Cummunications Satellite Corp., 759 F.2d 355, 365-366 (4th Cir. 1984). Although the burden of production shifts under this method, the burden of persuasion that the defendant engaged in retaliatory conduct rests at all times on the plaintiff. Beall v. Abott Labs, 130 F3d 614, 619 (4th Cir. 1997).

Although his initial burden is not designed to be onerous, in order to make his prima face case of retaliation, the plaintiff must show by a preponderance of the evidence that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a

---

[3]See Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002) ("Administrative investigation of retaliation . . . could not reasonably be expected to occur in light of [the plaintiff's] sole charge of race discrimination. . . ."); McGaw v. Biovail Pharm., Inc., 300 F.Supp.2d 371, 373 (D.Md. 2004) ("Permitting a plaintiff to proceed on discrimination claims not alleged in the initial EEOC complaint 'would eviscerate the administrative filing requirement altogether by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency.' ") (citations and other internal quotation marks omitted); Robinson v. Rubin, 77 F.Supp.2d 784, 792 (S.D.Tex. 1999) ("[Plaintiff's] claims for race and sex discrimination would not have fallen within the scope of a reasonable EEOC investigation into [his] retaliation claims.").

causal connection existed between the protected activity and the adverse action. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Wachovia concedes that the plaintiff has satisfied the first two elements of his prima facie case. The issue is whether the plaintiff can show "that the adverse employment action was taken because he engaged in a protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). The Court concludes that he cannot.

The plaintiff concedes that he committed the errors that lead to his termination, and he has provided no evidence that his mistakes did not warrant termination, or that he was treated worse than similarly situated employees who did not engaged in the statutorily protected activity. See Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004) (a plaintiff's self-serving opinions are insufficient to establish a prima facie case of discrimination); cf. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) (comparator must have a relatively similar history of misconduct). Thus, the only possible evidence of a causal link would be the temporal proximity of the events at issue. Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004). Generally speaking, proof of causation requires that the "temporal proximity between the protected activity and an adverse employment action" be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). In this case, the nearly four months that separate Scarborough's discharge and his first EEOC charge are too long in the absence of any other evidence to establish retaliation based on temporal proximity. See Clark, 532 U.S. at 273-74.[4] The Court further notes that, even if the plaintiff had alleged, which he did not, that the retaliation was based on his second EEOC charge,

---

[4] See also Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004); Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986).

7

his claim would still fail: although his filing of his third EEOC charge was closely followed by his discharge, no reasonable juror could infer that his termination had been caused by the EEOC activity since the termination process had been initiated prior to the claimed action.[5]

However, assuming arguendo that the plaintiff has made his prima facie case, the Court finds that the defendant has asserted non-discriminatory reasons for discharging Scarborough: he made several errors when he was first suspended, and those and other errors subsequently discovered, plus Scarborough's performance history, led to his termination. The plaintiff, however, has not argued that the defendant's reasons are a cover-up for retaliation, and the Court finds no evidence that the proffered either are false or lacking factual basis. The plaintiff's self-assessment of his job performance is irrelevant. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996). So is the allegation that a co-worker made an ambiguous, stay remark ("Boy, keep your head up"). See e.g., Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999). Finally, the plaintiff's allegations that, "in [A]pril 2003, the Defendant allowed Christine Brooks to remain employed . . . when she made a error which amount to over eleven thousand dollars in losses is insufficient to show pretext, as this allegation fails to show Ms. Brooks had a similar pattern poor performance and a cumulative comparable history of employment problems, or that Wachovia believed that she did. King v. Rumsfeld, 328 F.3d 145, 151-52 (4th Cir. 2003).

3. Third Cause of Action: Intentional Infliction of Emotional Distress

Even assuming the plaintiff's allegations in his Second Cause of Action are true, this

---

[5]See e.g., Horne v. Reznick, Fedder & Silverman, 154 Fed.Appx. 361, 364 (4th Cir. 2005) (citing McLee v. Chrysler Corp., 109 F.3d 130, 136 (2d Cir. 1997) ("[S]ince . . . [the defendant] was preparing to discharge [the plaintiff] before [the plaintiff] contacted any of the civil rights offices, it is not a permissible inference that [the plaintiff] was discharged because he contacted those offices.")); Carter v. Greenspan, 304 F.Supp.2d 13, 30 (D.D.C 2004) ("Because [plaintiffs] supervisors' dissatisfaction with his performance and their intentions to terminate him predated his protected activity, his retaliatory discharge claim is illogical and must be dismissed.").

8

conduct, even if motivated by racial animus, is insufficient to show support a claim for Intentional Infliction of emotional distress. To succeed on his claim, the plaintiff must show that that Wachovia (1) engaged in extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 487-88, 340 S.E.2d 116, 119 (1986). Here, the defendant's alleged conduct – a discriminatory discharge and using a rude tone of voice – is not extreme and outrageous as a matter of law. See e.g., Atkins v. USF Dugan, Inc., 106 F.Supp.2d 799, 810-11 (M.D.N.C. 1999) (collecting cases). And the record fails to show evidence demonstrating that he suffered from a diagnosable emotional or physical disorder. Although proof of severe emotional distress does not require medical evidence or testimony, the plaintiff must at least produce some evidence that he suffered severe and disabling psychological problems. Waddle v. Sparks, 331 N.C. 73, 85, 414 S.E.2d 22, 28 (1992).

4.     Fourth Cause of Action:  Negligent Supervision

Scarborough alleges that the defendant negligently supervised or retained employees who discriminated against him, and otherwise behaved rudely, thereby causing him emotional distress. To prove his claim, the plaintiff must demonstrate that Wachovia employees committed tortious acts, of which the defendant had actual or constructive knowledge. See id. at 87 (citations omitted). Because Scarborough has not demonstrated any evidence to support either his Title VII claims or his IIED claim, he has failed to demonstrate any tortious conduct. Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 774 (4th Cir.1997) (affirming summary judgment against a plaintiff's negligent supervision or retention claim upon finding "neither an underlying tort nor a violation of Title VII").

CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED THAT** the Defendant's Motion for Summary Judgment (Doc. No. 11) be **GRANTED**, and Plaintiff's case be **DISMISSED**.

Signed: September 29, 2006

Robert J. Conrad, Jr.
Chief United States District Judge